Cornele A. OVERSTREET, Regional Director, Region 28 of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

SFTC, LLC d/b/a Santa Fe Tortilla Company, Respondent.

No. 13–CV–0165 RB/LFG.

United States District Court, D. New Mexico.

May 9, 2013.

Sophia J. Alonso, David T. Garza, Albuquerque, NM, Brigham Bowen, Ethan Davis, Stephen Buckingham, United States Department of Justice, Washington, DC, for Petitioner.

Danny W. Jarrett, Jackson Lewis, LLP, Albuquerque, NM, Jeffrey W. Toppel, Jackson Lewis LLP, Phoenix, AZ, for Respondent.

## ORDER DENYING MOTION TO DISMISS

ROBERT C. BRACK, District Judge.

On February 21, 2013, Petitioner Cornele Overstreet, on behalf of the National Labor Relations Board, filed a Petition for a Temporary Injunction under Section 10(j) of the National Labor Relations Act against Respondent SFTC, LLC, d/b/a Santa Fe Tortilla Company. (Doc. 2). SFTC moved to dismiss the Petition, contending that neither the Board nor the NLRB's General Counsel had authority to file the Petition and that, as a result, the Court lacks subject matter jurisdiction. (Doc. 26). The motion is fully briefed. Having considered the arguments of counsel, relevant law, and otherwise being fully advised, the Court denies the motion.

## I. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, and the presumption is that they lack jurisdiction unless and until a plaintiff pleads sufficient facts to establish it." *Celli v. Shoell,* 40 F.3d 324, 327 (10th Cir.1994) (citations omitted). The party pleading jurisdiction must allege "facts essential to show jurisdiction." *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence. *Celli,* 40 F.3d at 327 (citation omitted).

A Rule 12(b)(1) motion, which challenges the court's subject matter jurisdiction over a case, can take one of two forms. First, a moving party may lodge a facial attack against the complaint's allegations as to the existence of subject matter jurisdiction. *Peterson v. Martinez,* 707 F.3d 1197, 1205 (10th Cir.2013). In reviewing a facial attack, the Court must accept the well-pled factual allegations in the complaint as true. *Id.* at 1205–06. Second, a party may go beyond the allegations contained in the complaint and challenge "the facts upon which subject matter jurisdiction depends." *Paper, Allied–Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.,* 428 F.3d 1285, 1292 (10th Cir. 2005) (citation omitted). In reviewing a factual attack, the Court must look beyond the complaint and has wide discretion to consider evidence in the form of documents, affidavits, and even testimony. *Id.* (citations omitted). Only if resolution of the jurisdictional question requires review of the merits of the substantive claims is a court required to convert a Rule 12(b)(1) motion into a Rule 56 summary judgment motion. *Id.* (citations omitted). SFTC's motion is a facial attack to jurisdiction that does not relate to the merits of Petitioner's claims, so the Court may consider evidence outside the four corners of the pleadings in determining whether it possesses jurisdiction to hear the Petition.

## II. BACKGROUND

Section 10(j) of the National Labor Relations Act provides, in relevant part, that "the Board shall have power, upon issuance of a complaint ... charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court ... for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j). On February 21, 2013, Petitioner brought this action for temporary relief pursuant to Section 10(j) based on unfair labor practices charges filed with Region 28 of the NLRB on August 20, 2012 and December 20, 2012. (Doc. 2). The charges allege that SFTC violated the National Labor Relations Act by seeking to discourage employees from participating in union activities and taking actions including punishing, threatening, and disciplining employees for their union activities.

SFTC moves to dismiss the petition, arguing that the Board did not have authority to act at the time it initiated this Section 10(j) proceeding because it lacks a quorum, that the Board did not validly delegate its authority to initiate Section 10(j) proceedings to its General Counsel, and that any delegation to the General Counsel did not survive the loss of a quorum. (Doc. 26). Additionally, SFTC contends that, because the Board cannot validly enter a permanent injunctive order, the Court cannot award temporary relief. (*Id.*) Some background on the current composition of the Board is necessary to explain the basis for SFTC's motion.

The Board has a total capacity of five Members, and it is statutorily required to have a quorum of three Members to take action. *See* 29 U.S.C. §§ 153(a) & (b). On November 9, 2011, concerned that it might

lose its quorum, the Board published an order in the Federal Register that contingently delegated certain aspects of its prosecutorial authority to its General Counsel. Order Contingently Delegating Authority to the General Counsel, 76 Fed. Reg. 69768–02, 69768 (Nov. 9, 2011). This Delegation Order was intended to allow the prosecutorial functions of the NLRB to continue without a quorum. At the time that the Board approved the Delegation Order, there were only three Members on the Board: Mark Pearce, Brian Hayes and Craig Becker. *Members of the NLRB since 1935*, NAT'L LABOR RELATIONS BD., http://www.nlrb.gov/members–nlrb–1935 (last visited May 7, 2013). Mr. Becker and Mr. Pearce were appointed to the Board by President Obama on March 27, 2010 without the advice and consent of the Senate. *President Obama Announces Recess Appointments to Key Administration Positions,* THE WHITE HOUSE: OFFICE OF THE PRESS SECRETARY (Mar. 27, 2010), http://www.whitehouse.gov/the-press-office/president-obama-announces-recess-appointments-key-administration-positions. President Obama relied on the Recess Appointments Clause to appoint the two Members, given that the Senate was on intrasession recess. *See id.*

The 2011 Delegation Order stated that the Board would temporarily delegate "to the General Counsel full and final authority and responsibility on behalf of the Board to initiate and prosecute injunction proceedings under section 10(j) . . . ." Order Contingently Delegating Authority to the General Counsel, 76 Fed.Reg. at 69768. The delegation was to "be effective during any time at which the Board has fewer than three Members . . . ." *Id.* It goes on to expressly state, "All existing delegations of authority to the General Counsel and to staff in effect prior to the date of this order remain in full force and effect." *Id.* at 69769. It then identifies delegations of Section 10(j) authority that occurred in

2001 and 2002 and confirms, "This Order consolidates, restates and affirms those prior delegations." *Id.* at 69769 n. 2.

As noted by the 2011 Delegation Order, the Board had, on multiple prior occasions in anticipation of the loss of a quorum, approved similar delegation orders. Indeed, in both 2001 and 2002, the Board issued similar orders. On December 14, 2001, in anticipation of the loss of its quorum, the Board "temporarily delegate[d] to the General Counsel full authority on all court litigation matters that would otherwise require Board authorization." Order Delegating Authority to the General Counsel, 66 Fed.Reg. 65998–02, 65998 (Dec. 21, 2001). The delegation would be "effective during any time at which the Board has fewer than three Members . . . . [but it] shall be revoked whenever the Board has at least three Members." *Id.* Less than a year later, on November 19, 2002, the Board was again faced with the prospect that it would temporarily have fewer than three Members. The Board delegated unrelated authority to the General Counsel and stated, "All existing delegations of authority to the General Counsel and to staff in effect prior to the date of this order remain in full force and effect, including the December 14, 2001, delegation regarding court litigation authority . . . ." Order Delegating Authority to the General Counsel, 67 Fed.Reg. 70628–01, 70628 (Nov. 25, 2002). Though no time limitation was included in the paragraph discussing the delegation of litigation authority, an earlier paragraph of the order stated that the delegation would "cease to be effective whenever the Board has at least three Members." *Id.*

On January 3, 2012, Mr. Becker's term on the Board expired, and the Board was left with two Members. NAT'L LABOR RELATIONS BD., http://www.nlrb.gov/members–nlrb–1935. The next day, Present Obama

announced three recess appointments to the Board: Terrence Flynn, Sharon Block, and Richard Griffin. *President Obama Announces Recess Appointments to Key Administration Posts*, THE WHITE HOUSE: OFFICE OF THE PRESS SECRETARY (Jan. 4, 2012) http://www.whitehouse.gov/the-press-office/2012/01/04/president-obama-announces-recess-appointments-key-administration-posts. The three new Members were sworn in on January 9, 2013. *New Board Members Take Office, Announce Chief Counsels*, NAT'L LABOR RELATIONS BD.: NEWS RELEASES (Jan. 10, 2012), http://www.nlrb.gov/news-outreach/news-releases/new-board-members-take-office-announce-chief-counsels.

Shortly before this 10(j) Petition was filed, on January 25, 2013, the D.C. Circuit Court of Appeals determined that the three recess appointments were unconstitutional and that, as a result, the Board does not currently have a quorum of three Members. *Noel Canning v. NLRB*, 705 F.3d 490 (D.C.Cir.2013). The D.C. Circuit concluded that the Recess Appointments Clause may only be utilized when (1) the Senate is on an intersession, not intrasession, recess; and (2) the vacancy to be filled arises during the recess. The *Noel Canning* decision is in conflict with decisions of other circuit courts, which have concluded that intrasession recess appointments to vacancies that arise prior to the recess comply with the Recess Appointments Clause. *Evans v. Stephens*, 387 F.3d 1220, 1226–27 (11th Cir.2004) (President can use Recess Appointment Clause during intrasession recesses and regardless of when the vacancy arises); *United States v. Woodley*, 751 F.2d 1008, 1012–13 (9th Cir.1985) (President can use Recess Appointment Clause regardless of when vacancy arises); *United States v. Allocco*, 305 F.2d 704, 709–15 (2d Cir.1962) (same).

## III. ANALYSIS

### a. Validity of the Delegation Orders

SFTC contends that the 2011 Delegation Order is invalid because it was not issued by a properly constituted quorum. (Doc. 26 at 12–14; Doc. 37 at 5–7). Specifically, SFTC contends that Mr. Becker, one of the three Members who issued the 2011 Delegation Order, was invalidly appointed to the Board. Petitioner correctly posits that the Court should not reach the constitutional issue regarding the appointment of Board Members if the motion can be resolved on statutory grounds. (Doc. 29 at 13). In an effort to avoid the constitutional issue, Petitioner asserts that, even if the 2011 Delegation Order is invalid, the Board's extant 2001 and 2002 delegations provide the General Counsel with authority to initiate 10(j) proceedings absent a proper quorum. (Doc. 29 at 16–17). If SFTC's motion can be resolved on statutory grounds, this Court will decline to reach the constitutional question in a proper exercise of judicial restraint. Thus, the first question before the Court is whether, even assuming that the Board currently lacks a quorum and that it lacked a quorum when it issued the 2011 Delegation Order, the Board's authority to prosecute 10(j) petitions was validly delegated to the General Counsel when the instant 10(j) Petition was filed. It appears that the continuing validity of the 2001 and 2002 Delegation Orders is a novel issue, and this Court has found no other opinion addressing the subject.

In support of its position that the General Counsel's authority derives from the 2001 and 2002 delegations, Petitioner points out that the Delegation Orders have no fixed termination date on their face. (Doc. 29 at 16). Petitioner bolsters its argument with the language from the 2011 Delegation Order referencing and reaffirming these prior delegations, which, ac-

cording to the Board, remain in full force and effect. (*Id.* at 16–17). SFTC counters that the 2001 and 2002 Delegation Orders were issued over a decade ago. (Doc. 37 at 8). Based on the use of the word "temporary," it argues that the delegations were intended to be of short duration, addressed specifically to the impending quorum loss in 2001 and 2002. (*Id.* at 8–9). SFTC further argues that the language of the orders demonstrates that the delegation ended once the Board regained a proper quorum. (*Id.* at 10). Finally, SFTC endeavors to rebut the language of the 2011 delegation that reaffirms the prior delegations, arguing that the language relates only to existing delegations and does not include the 2001 and 2002 delegations because they were not in existence in 2011. (*Id.* at 11).

■ After considering the language of the 2001 and 2002 Delegation Orders, the Court concludes that the prior orders remain in effect. Both orders do include language rescinding the delegation during periods when the Board has a quorum, but neither the 2001 nor the 2002 Delegation Order indicates that the reconstitution of a quorum permanently terminates the delegation. The 2001 order, which specifically delegated to the General Counsel authority to initiate 10(j) petitions, states that the delegation "shall be effective during **any time** at which the Board has fewer than three Members." Order Contingently Delegating Authority to the General Counsel, 76 Fed.Reg. at 69768 (emphasis added). This language contemplates that the order resumes in full effect at any time that the Board's membership drops below three. Additionally, the order includes language that it "shall be revoked **whenever**" the Board has three Members. *Id.* (emphasis added). The use of the word "whenever" similarly indicates that the delegation ceases when the Board has a valid quorum and becomes effective at any

point when the Board membership drops below three.

In 2002, the Board confirmed this interpretation. Between the entry of the 2001 Delegation Order and the 2002 Delegation Order, the Board membership increased to as many as four Members. *See* Nat'l Labor Relations Bd., http://www.nlrb.gov/members–nlrb–1935. Nevertheless, in late 2002, the Board confirmed that the 2001 Delegation Order constituted an "existing delegation of authority to the General Counsel" that remained "in full force and effect. . . ." Since 2002, the Board has taken no action to terminate these delegations. As such, they remain in effect.

The Court notes that both the 2001 and 2002 Delegation Orders use the word "temporary" more than once. However, in the full context of the orders, as described above, it appears that the word "temporary" indicates that the authority to institute 10(j) proceedings rests with the General Counsel only during periods of relatively short duration when the Board does not possess a valid quorum.

Though the Court assumes without deciding that the 2011 delegation is invalid, that order further supports the Court's conclusion that the prior delegations remain in effect. The 2011 delegation of authority expressly states, "All existing delegations of authority to the General Counsel and to staff in effect prior to the date of this order remain in full force and effect." Order Contingently Delegating Authority to the General Counsel, 76 Fed. Reg. at 69769. It goes on to specifically identify the 2001 and 2002 delegations of 10(j) authority to the General Counsel and to confirm, "This Order consolidates, restates and affirms those prior delegations." *Id.* at n. 2. By referencing the 2001 and 2002 delegations and describing them as "existing" and remaining "in full force and

effect[,]" the Board confirmed that the prior delegations remain valid.

SFTC questions the continuing validity of the 2001 and 2002 delegations based on the fact that the Board continued to issue delegation orders after 2001. The Court does not find this argument persuasive. The Board frequently reaffirms the validity of its actions through cumulative orders and acts. For example, in 2007, the Board delegated all of its authority to a three Member group and authorized two Members of the group to act as a quorum, an action later found impermissible by the Supreme Court. *New Process Steel, L.P. v. NLRB,* 560 U.S. 674, 130 S.Ct. 2635, 177 L.Ed.2d 162 (2010). Along with the delegation of all authority to three members, the Board again delegated its litigation authority to the General Counsel. Press Release R–2653, National Labor Relations Board, *Labor Board Temporarily Delegates Litigation Authority to General Counsel; Will Issue Decisions with Two Members after Members Kirsanow and Walsh Depart* (Dec. 28, 2007), *available at* www.nlrb.gov. Unlike the 2001 and 2002 delegations, the 2007 delegation was not published in the Federal Register, did not reference or incorporate the prior delegations, and "was automatically revoked when additional members joined the Board in April 2010." Press Release, National Labor Relations Board, *New Board Ratifies the General Counsel's Litigation Authority in 2008–09* (July 8, 2010), *available at* http://www.nlrb.gov; *see also Osthus v. Whitesell Corp.,* 639 F.3d 841, 843 n. 1 (8th Cir.2011). When the Board returned to full membership, the Board took arguably unnecessary action by ratifying both the 2007 delegation of prosecutorial authority and all actions taken by the two member Board since 2007. Press Release, National Labor Relations Board (July 8, 2010). The Board's action in issuing cumulative delegation orders merely demonstrates its efforts to ensure the validity of its actions; it

does not demonstrate that the original delegation lacks validity.

SFTC next contends that the delegations of authority to the General Counsel did not survive the loss of the authorizing quorum. For support, SFTC relies solely on the D.C. Circuit Court of Appeals' opinion in *Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB,* 564 F.3d 469 (D.C.Cir.2009). In the relevant portion of *Laurel Baye,* the court relied on the Restatement (Third) of Agency to find that the 2007 delegation of authority to the General Counsel terminated the moment that the powers belonging to the entity that bestowed the authority were suspended, or, in other words, the moment that the Board lost its quorum. *Id.* at 473. However, the reasoning underlying this aspect of *Laurel Baye* has been rejected by the Supreme Court as well as all subsequent circuit and district courts to consider the issue. *See New Process Steel,* 560 U.S. at ——, 130 S.Ct. at 2638; *Frankl v. HTH Corp.,* 650 F.3d 1334, 1354 (9th Cir.2011); *Osthus,* 639 F.3d at 844; *Overstreet v. El Paso Disposal, L.P.,* 625 F.3d 844, 852–54 (5th Cir.2010); *Calatrello v. JAG Healthcare, Inc.,* No. 1:12–CV–726, 2012 WL 4919808, at *3–4 (N.D.Ohio Oct. 16, 2012); *Gottschalk v. Piggly Wiggly Midwest, LLC,* 861 F.Supp.2d 962, 964–65 (E.D.Wis. 2012); *Paulsen v. Renaissance Equity Holdings, LLC,* 849 F.Supp.2d 335, 347–50 (E.D.N.Y.2012); *Fernbach v. 3815 9th Ave. Meat & Produce Corp.,* No. 12 Civ. 823, 2012 WL 992107, at *1 (S.D.N.Y. Mar. 21, 2012).

In *New Process Steel,* the Supreme Court considered *Laurel Baye's* application of agency law to the 2007 delegation of authority. While the validity of the delegation of 10(j) authority was not at issue before the Court, it intimated that it rejected the application of agency principles. In a footnote, the Court stated that its

opinion rejecting the Board's delegation of all authority to a two Member quorum "does not cast doubt on the prior delegations of authority to nongroup members, such as ... the general counsel." 130 S.Ct. at 2643 n. 4. This Court concurs with the Supreme Court's statement in *New Process Steel* and the subsequent decisions of all courts confronted with the issue. As such, the Court finds that the Board's delegation of 10(j) authority to the General Counsel survives the loss of a quorum.

### b. Availability of Temporary Relief Absent Final Remedial Power

 SFTC also contends that the absence of a proper quorum destroys the Board's authority to issue an enforceable final order, which would render any temporary injunctive relief ordered by a district court *de facto* permanent relief. (Doc. 26 at 18–26). Section 10(j) is intended as an interim remedy, used to protect the remedial power of the Board while it adjudicates unfair labor practices charges. *Paulsen,* 849 F.Supp.2d at 347 (citing *Chester v. Grane Healthcare Co.,* 666 F.3d 87, 97 (3d Cir.2011); *Small v. Avanti Health Sys., LLC,* 661 F.3d 1180, 1186 (9th Cir.2011)). SFTC notes that, to order injunctive relief under Section 10(j), the court must find that there is a reasonable basis to believe that the Board's ultimate decision will be upheld by an appellate court. (Doc. 26 at 20 n. 8, 21). SFTC contends that, because the D.C. Circuit will not enforce a final remedy ordered by the Board as it is currently constituted, the Board should not petition this Court for relief. (Doc. 26 at 20 n. 8, 21). It also asserts that, by entertaining the instant 10(j) Petition, this Court would be permitting an end-run around the Board's statutory obligation to maintain a proper quorum. (*Id.* at 21).

Petitioner asserts that this argument by SFTC is not ripe for adjudication. Specifically, Petitioner contends that whether or not the Board will have the quorum necessary to issue a final order at some undefined future date is unknown. (Doc. 29 at 17). There are many possible outcomes from the administrative proceedings, which involve several steps even after the ALJ renders his decision on the merits. (*Id.* at 17–18). As such, Petitioner concludes that SFTC's argument is not ripe. SFTC counters that it will suffer a present harm if the Court awards a remedy that the Board cannot presently obtain through a final remedial order. (Doc. 37 at 12).

The Court agrees with SFTC that, assuming the Board lacks a proper quorum, it cannot currently issue a final remedial order. However, as described by the *Paulsen* Court, any number of outcomes could result from the ongoing administrative proceedings, assuming that the Board finds that unfair labor practices occurred. One possibility is that the Board could attempt to issue a final remedial order, implicating the problem suggested by SFTC. On the other hand, the General Counsel could choose not to seek enforcement of the Board's order. *Paulsen,* 849 F.Supp.2d at 352. Moreover, the Board's membership could change in the interim between this Court's decision on the 10(j) Petition and the conclusion of the administrative proceedings. *Id.* It is also possible that the parties could resolve their differences and reach an agreed resolution before any appeal of the Board's final decision. *See id.* Because SFTC's argument rests on future, contingent events that may not occur, its contention is not ripe. *See Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (citation omitted).

### c. Constitutional Question

Having determined that the Board's 2001 and 2002 delegations to the General Counsel remain valid, this Court will not make any pronouncement on the constitu-

tionality of the President's recess appointments to the Board. In the interest of judicial restraint, a court should not decide a constitutional question unless it is absolutely necessary to the court's decision. *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); *Rocky Mountain Christian Church v. Bd. of Cnty. Commis.*, 613 F.3d 1229, 1239 (10th Cir.2010) (citation omitted). Regardless of whether President Obama's recess appointments to the Board were constitutional, this Court would still find that the Board, either acting as a valid quorum or, alternatively, through the authority delegated to the General Counsel, has authority to bring the instant Section 10(j) Petition. Consequently, the constitutional question has no capacity to change the Court's decision to deny SFTC's motion to dismiss.

**THEREFORE,**

**IT IS ORDERED** that SFTC's Motion to Dismiss, filed March 25, 2013 (Doc. 26), is **DENIED.**