**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 5, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LARI KEI TADEHARA;
JULIA KAY TADEHARA,

      Plaintiffs-Appellants,

v.

ACE SECURITIES CORP. HOME
EQUITY LOAN TRUST SERIES
2007-HE4; OCWEN LOAN
SERVICING; HSBC BANK USA, N.A.;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

      Defendants-Appellees,

and

DB STRUCTURED PRODUCTS;
DB HOME LENDING,

      Defendants.

No. 11-4176
(D.C. No. 2:11-CV-00436-DS)
(D. Utah)

**ORDER AND JUDGMENT**[*]

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R App. P. 32.1 and 10th Cir. R. 32.1.

Before **BRISCOE**, Chief Judge, **PORFILIO**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

---

In the underlying action, Lari Kei Tadehara and Julia Kay Tadehara sought to quiet title to property on which they had given a mortgage to secure a loan. They also brought a claim seeking rescission of the loan based on alleged violations of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667f, and they asserted state-law claims for fraud and wrongful disclosure. The district court dismissed their action, and the Tadeharas appealed. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Background

On February 8, 2007, the Tadeharas obtained a loan secured by a mortgage on their house in Murray, Utah. They gave a promissory note secured by a Deed of Trust to defendant DB Home Lending. The beneficiary of the Deed of Trust was identified as defendant Mortgage Electronic Registration Systems, Inc. (MERS), "(solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." R. at 141. The Deed of Trust gave MERS the power to foreclose and sell the property.

Thereafter, two separate assignments of the Deed of Trust were recorded in the Salt Lake County Recorder's Office. The assignments transferred MERS's interest to materially identical assignees. In the first, which had an execution date of February 5, 2009, and a recordation date of August 5, 2009, MERS assigned the

Deed of Trust to "HSBC Bank USA, N.A. [(HSBC)], as trustee on behalf of Ace Securities Corp. Home Equity Loan Trust, Series 2007-HE4 [(Ace Loan Trust)], and for the registered holders of Ace Securities Corp. Home Equity Loan Trust, Series 2007-HE4, Asset Backed Pass-Through." *Id.* at 43 (capitalization omitted). HSBC and the Ace Loan Trust are defendants here. The second assignment had an execution date of November 17, 2009 (although it stated in the body that it was entered into on April 30, 2007). It was recorded on November 30, 2009, and assigned the Deed of Trust from MERS, as nominee for DB Home Lending, to HSBC "as trustee on behalf of [ACE Loan Trust] and for the registered holders of Ace Securities Corp. Home Equity Loan Trust, Series 2007-HE4, Asset Backed Pass-Through Certificates." *Id.* at 45 (capitalization omitted).

With regard to the loan, the Tadeharas alleged that prior to April 30, 2007, DB Home Lending sold its interest in the promissory note to either DB Structured Products, (a defendant here), or another buyer that sold the note to DB Structured Products. The Tadeharas also alleged that DB Structured Products then sold its rights in the loan to defendant Ace Securities Corp.,[1] as evidenced by a Mortgage Loan Purchase Agreement executed on April 30, 2007. Further, the Tadeharas alleged that Ace Securities Corp. transferred all of its interest in the note to HSBC, as trustee for

---

[1]     In their complaint, the Tadeharas listed Ace Securities Corp. as a defendant. However, Ace Securities Corp. is not listed in the district court's docket as a defendant, so we have omitted it from the caption of this case. In any event, the omission appears immaterial to the issues we decide on appeal.

- 3 -

the Ace Loan Trust, via a pooling and service agreement created on or about April 30, 2007, among Ace Securities Corp.; defendant Ocwen Loan Servicing; HSBC; DB Structured Products; and other, unidentified parties.

On August 27, 2009, the Tadeharas sent a notice of rescission to all defendants, claiming that DB Lending failed to provide required disclosures under TILA. Defendants took no action. The Tadeharas apparently stopped paying their mortgage, and the trustee sent them a Notice of Default, which was recorded on March 18, 2010, and an Amended Notice of Default, which was recorded on June 4, 2010.

Through counsel, the Tadeharas filed an action in federal court on September 16, 2010, raising a number of claims against some of these same defendants, including a request for declaratory judgment that they had a right to rescind under TILA and properly exercised that right.[2] Defendants filed a motion to dismiss. The court scheduled a hearing on the motion for May 3, 2011. The Tadeharas fired their attorney and appeared at the hearing pro se. At the hearing, the district court orally dismissed the action without prejudice, and a written order of dismissal was filed on May 16, 2011, stating that the action was dismissed for the reasons stated in the defendants' motion.

---

[2]   According to the complaint in that action, the Tadeharas filed for Chapter 13 bankruptcy four days after sending the notice of rescission.

- 4 -

On May 9, 2011, less than a week after the hearing in the first case, the Tadeharas filed the present suit in Utah state court through new counsel. Defendants removed the action to the United States District Court for the District of Utah. The Tadeharas raised four claims: quiet title/declaratory judgment; fraud; wrongful foreclosure; and TILA rescission/monetary damages. Defendants filed a motion to dismiss, which the district court granted. Because the Tadeharas have appealed only the district court's dismissal of their quiet title and TILA claims, we limit our discussion to those claims.

In their quiet title/declaratory judgment claim, the Tadeharas asserted that none of the defendants had any right in the note, the Deed of Trust, or their property. According to the Tadeharas, MERS and DB Home Lending had no interest in the property to assign to HSBC in 2009 because HSBC claimed that it acquired "such interest," *id.* at 18, from Ace Securities Corp., not DB Home Lending, on April 30, 2007, and at that time no agency existed between Ace Securities Corp. and MERS. Further, the Tadeharas maintained that no written assignment was ever executed from DB Home Lending to DB Structured Products or an intervening buyer, or from an intervening buyer to DB Structured Products. Also, they asserted that no written assignment from DB Structured Products to Ace Securities Corp. was ever executed and recorded prior to either of the assignments from MERS to HSBC in 2009.

In their TILA claim, the Tadeharas asserted that their loan was a consumer credit transaction subject to TILA's rescission remedy, 15 U.S.C. § 1635, and that

they had timely asserted their right to rescission when they sent their notice of rescission on August 27, 2009.

For relief, the Tadeharas asked for a declaration "that none of the Defendants have a claim on the Real Estate, that none of the Defendants are creditors of Defendants [sic] under the Note, and that Title to the Real Estate is quieted against defendants in favor of Plaintiffs, and that the 1st Trust Deed is a nullity." *Id.* at 22-23. They also sought an order voiding the Deed of Trust, an injunction directing defendant to take actions necessary for rescission under § 1635, and damages, penalties, and costs.

In their motion to dismiss, defendants argued that the quiet title/declaratory judgment claim should be dismissed because the Tadeharas had failed to allege they held title to the property, instead focusing on alleged weaknesses in defendants' title interests. Defendants also claimed that the Tadeharas' argument that MERS lacked standing to authorize the assignment of the Deed of Trust and the resulting foreclosure had been consistently rejected in the Utah federal district court. On the TILA claim, defendants advanced four reasons for dismissal: (1) rescission was time-barred because the property had been sold in foreclosure on May 24, 2011, and under 15 U.S.C. § 1635(f), when a lender fails to provide the required TILA disclosures, the right to rescind extends for three years from the date the transaction was completed or until the sale of the property, whichever occurs first; (2) rescission was time-barred by § 1635(f)'s three-year limitations period because the loan closed

on February 8, 2007, but the Tadeharas did not file this action until May 9, 2011; (3) damages were barred by a one-year statute of limitations, 15 U.S.C. § 1640(e), which defendants claimed ran from the date that the first payment of principal was due in March 2007; and (4) rescission was improper under the reasoning of *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1171 (9th Cir. 2003), because the Tadeharas did not allege their willingness or ability to tender amounts owed under the loan.

In their response to defendants' motion to dismiss their quiet title claim, the Tadeharas relied on Utah Code Ann. § 57-1-35, which provides, "The transfer of any debt secured by a trust deed shall operate as a transfer of the security therefor." Based on that statute, they argued that defendants were not holders of the note and therefore were not beneficiaries of the Deed of Trust. They also claimed that they had "alleged facts calling into question the validity of the recorded assignments statements [sic] purporting to transfer beneficial interest in the trust deed. Only the beneficiary, or its agent can transfer its interests. Therefore, pursuant to . . . § 57-1-35, only the Note holder, or its agent can transfer the beneficial interest." R. at 214-15. The Tadeharas further claimed that even if MERS had authority from the members of the Ace Loan Trust (which they contested), there was still a problem with the assignments of the Deed of Trust from MERS to HSBC in 2009; in the assignments, MERS purported to assign as nominee for DB Home Lending, but by the time of the assignments, there had already been at least two intervening owners of

the promissory note, and DB Home Lending had nothing to assign, even if MERS was acting as its agent. On the TILA claim, the Tadeharas argued that they exercised their right of rescission by filing their notice of rescission within the three-year limitations period of § 1635(f) and prior to the foreclosure sale of their house. They also asserted that it was unnecessary to plead tender or the ability to tender amounts they owed under the note.

In reply to the Tadeharas' quiet-title arguments, defendants pointed to a case that was filed on the same day they filed their motion to dismiss, *Commonwealth Property Advocates, LLC v. Mortgage Electronics Registration System, Inc.*, 263 P.3d 397 (Utah Ct. App.), *cert. denied*, 268 P.3d 192 (Utah 2011), in which the Utah Court of Appeals rejected arguments similar to those the Tadeharas' advanced. Defendants also reiterated their TILA arguments.

In ruling on the state-law quiet title claim, the district court concluded that the Tadeharas failed to state a claim under the principle that "a plaintiff must prevail on the strength of his own claim to title and not on the weakness of a defendant's title or even its total lack of title." *Church v. Meadow Springs Ranch Corp.*, 659 P.2d 1045, 1048-49 (Utah 1983). The court observed that the Tadeharas had not alleged that they held clear title to the property, had not alleged that they were not in default on the note, and had admitted to conveying their interest in the property for the purpose of securing the loan. The court also rejected the Tadeharas' argument that MERS lacked standing to authorize the assignment of the Deed of Trust and the resulting

foreclosure, noting that they had agreed in the Deed of Trust that MERS was the beneficiary and its successors and assigns had foreclosure authority.

Turning to the TILA claim, the district court concluded that the transaction at issue was a "residential mortgage transaction," as defined in 15 U.S.C. § 1602(x), and therefore exempt from TILA's rescission remedy under 15 U.S.C. § 1635(e)(1) and 12 C.F.R. § 226.23(f)(1). The court also concluded that the TILA claim failed because the Tadeharas had not alleged that they tendered or had the ability to tender the amounts they owed under the note. The court did not address defendants' arguments that the TILA claim was time-barred by § 1635(f) or § 1640(e).

## II. Analysis

Although the Tadeharas were represented by counsel in the district court, they have proceeded on appeal pro se. Thus, only their appellate filings are entitled to the liberal construction afforded to pro se litigants. *See Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994). We review de novo a dismissal for failure to state a claim. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). "[I]n ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Id.*

### A. Quiet title/declaratory judgment claim

We first address the quiet title/declaratory judgment claim. The Tadeharas take issue with the district court's conclusion that they failed to allege clear title.

They argue that they held a warranty deed on the property and sought to quiet title as to the defendants, who allegedly recorded interests hostile to their own. They continue to rely on Utah Code Ann. § 57-1-35. Again, that statute provides: "The transfer of any debt secured by a trust deed shall operate as a transfer of the security therefor." They claim that under the statute, once the promissory note was transferred, the benefit of the Deed of Trust was transferred to the holder of the note, and only the holder of the note or its agent can transfer the beneficial interest in the Deed of Trust. Thus, they conclude, none of the defendants are beneficiaries of the Deed of Trust because none of them are holders of the note.

The Tadeharas' interpretation of § 57-1-35 was squarely rejected by the Utah Court of Appeals in *Commonwealth Property Advocates*, 263 P.3d 397, and the reasoning of that case has been endorsed by this court in a case bearing the same caption, *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194 (10th Cir. 2011). In the state case, the Utah Court of Appeals addressed the argument that a note was separated from its accompanying deed of trust when it was "securitized," which the court explained as "the process of pooling debts, such as mortgage loans, and selling shares in the pool to investors as a means of infusing the lending markets with more capital." 263 P.3d at 399 & n.2. The court interpreted § 57-1-35 as "simply describ[ing] the long-applied principle in our jurisprudence that when a debt is transferred, the

- 10 -

underlying security continues to secure the debt." *Id.* at 403. The court further reasoned that the statute

> ensur[es] the basic presumption that "a transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise," *see* Restatement (Third) of Prop.: Mortgages § 5.4. The plain language of the statute does nothing to prevent MERS from acting as nominee for Lender and Lender's successors and assigns when it is permitted by the Deed of Trust.

*Id.* (brackets omitted). Even more, the court refused to "interpret the statute as preventing, implying, or somehow indicating that the original parties to the Note and Deed of Trust cannot validly contract at the outset to have someone other than the beneficial owner of the debt act on behalf of that owner to enforce rights granted in the security instrument." *Id.* (quotation and brackets omitted). Finally, the court noted that "the Deed of Trust explicitly gave MERS the right to foreclose on behalf of 'Lender and Lender's successors and assigns.' The statute does not prohibit parties from contracting for these arrangements, and nowhere in the documents themselves is MERS explicitly prohibited from then assigning its beneficial interest under the Note . . . ." *Id.* at 403-04.

In the Tenth Circuit *Commonwealth* case, we followed the Utah Court of Appeals' *Commonwealth* case, concluding that the Utah Supreme Court would not reach a different conclusion and noting that the Utah Supreme Court had chosen not to grant certiorari. *See Commonwealth Prop. Advocates, LLC*, 680 F.3d at 1203-05. We also noted that the Utah Court of Appeals "reinforced its decision in an even more recent appeal by" the same plaintiff. *Id.* at 1205 (citing *Commonwealth Prop.*

- 11 -

*Advocates, LLC v. U.S. Bank Nat'l Ass'n*, ___ P.3d ___, No. 20110596-CA, 2011 WL 6091684 (Utah Ct. App. Dec. 8, 2011)).  We added:

> Even assuming Plaintiff is correct that securitization deprives Defendants of their implicit power to foreclose as holders of the trust deeds, the trust deeds *explicitly* granted Defendants the authority to foreclose.  Contrary to Plaintiff's contention, § 57-1-35 in no way prohibits such an authorization.  The statute merely says the transfer of a debt operates as the transfer of the security.  It says nothing about who is or is not authorized to foreclose on a trust deed.

*Id.* at 1204-05.

Here, the Tadeharas have not made a point of the fact that the pooling and servicing agreement into which the promissory note eventually found its way was a securitization of the note, but that is precisely what happened.  Thus, we see no analytical distinction between this case and the Utah and Tenth Circuit *Commonwealth* cases regarding the legal conclusion that § 57-1-35 does not operate to strip the beneficiary of a Deed of Trust or its assigns of the power to foreclose on the secured property on behalf of the original lender or any of its assignees.  This is precisely what the Tadeharas agreed to and what happened here:  an assignee of the Deed of Trust foreclosed on behalf of an assignee of the note.  Hence, it was entirely proper for the district court to dismiss the quiet title/declaratory judgment claim under Fed. R. Civ. P. 12(b)(6).  *See Commonwealth Prop. Advocates, LLC*, 680 F.3d at 1202 (explaining that "[d]ismissal is appropriate if the law simply affords no relief").

- 12 -

**B. TILA claim**

The Tadeharas also take issue with the dismissal of their TILA claim. They argue that the district court erroneously characterized their loan transaction as a residential mortgage transaction exempt from TILA rescission and that the court erred in requiring them to plead the ability to tender the amounts owed under the note. We need not resolve these issues because a recent decision of this court leads us to exercise our discretion to affirm the district court's judgment on another ground supported by the record, namely, that the Tadeharas' right to TILA rescission expired before they filed this action. In exercising our discretion to affirm on an alternate ground, we consider whether "the issue was fully briefed and argued in district court, the issue was raised on appeal, the parties had ample opportunity to present relevant evidence, and there are no material factual disputes." *Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004). These factors are sufficiently satisfied here.

TILA provides an obligor with the right to rescind a consumer credit transaction that involves a security interest in the obligor's principal dwelling. *See* 15 U.S.C. § 1635(a). When a creditor fails to make the notice or material disclosures required under TILA, the "right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." *Id.* § 1635(f); *see also* 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after

- 13 -

consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.").

The Tadeharas argue that giving notice to their lender of their intent to rescind in August 2009, less than three years after consummating their loan transaction on February 8, 2007, was all that was required to timely exercise their right under TILA. This court has recently rejected this argument. In *Rosenfield v. HSBC Bank, USA*, ___ F.3d ___, No. 10-1442, 2012 WL 2087193, at *6 (10th Cir. June 11, 2012), we considered whether a plaintiff's written notice of rescission within the three-year period was sufficient to invoke the right of rescission where the plaintiff did not file her action until after the three-year period had expired. We concluded that it was not enough "where a creditor fails to respond," *id.*, holding "that the mere invocation of the right to rescission via a written letter, without more, is not enough to preserve a court's ability to effectuate (or recognize) a rescission claim after the three-year period has run," *id.* at *7. As we explained, § 1635(f) is a statute of repose which limits the ability to file an action or assert a defense:

> TILA establishes a *right of action* that is *generally* redressable only when a party seeks recognition of it by invoking the power of the courts. Indeed, we believe that it is the filing of an action in a court (or perhaps a defensive assertion of the rescission right in a court) that is required to invoke the right limited by the TILA statute of repose; the concept of repose itself (especially in the context here) fundamentally *limits* the ability to file an action.

*Id.* (footnote omitted). Based on this understanding, we concluded that the district court correctly dismissed the plaintiff's action, which was filed after the three-year

period had elapsed, stating that "[t]he commencement of a lawsuit within the three-year TILA repose period was required." *Id.* at *11.

Like the plaintiff in *Rosenfield*, the Tadeharas filed only a written notice of rescission within the three-year TILA repose period. Their action was filed on May 9, 2011, more than three years after they consummated their loan transaction on February 8, 2007. Their right of rescission, therefore, expired before they filed suit. Thus, they are not entitled judicial effectuation of a rescission remedy.

The judgment of the district court is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge